# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARCIA M. SNELL,<br><br>        *Plaintiff*,<br><br>v.<br><br>REBECCA A. REID, *et al.*,<br><br>        *Defendants*. | CASE NO. 3:21-cv-24<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

## I. INTRODUCTION

This matter comes before the Court on Defendant Rebecca A. Reid's motion to dismiss portions of Plaintiff Marcia M. Snell's second amended complaint for failure to state a claim, Dkt. 44.

Snell's second amended complaint alleges that Snell fell and injured herself when she tried to support herself on a wooden railing along the stairs in her rental home. Snell discovered that the wood had rotted out but had been covered with a fresh layer of white paint so that it was not apparent that the railing was fragile. The second amended complaint names three defendants: Rebecca A. Reid (the owner of the home), Buffy Jo Gustafson (the home's property manager and Snell's leasing agent), and Hasbrouck Real Estate Corporation (the property management company). The second amended complaint pleads five causes of action: negligence (Count I), negligence per se (Count II), fraudulent concealment (Count III), fraud (Count IV), and constructive fraud (Count V).

The present motion to dismiss, Dkt. 44, relates only to Count I of the second amended complaint—the negligence claim. Defendant Reid argues that Plaintiff's claim is not cognizable under Virginia tort law and must be dismissed.

Taking the facts alleged in the complaint as true, the Court holds that Plaintiff has pled a valid negligence claim under Virginia law, and therefore the Court will deny Reid's motion.

## II.  BACKGROUND

Plaintiff filed her original complaint (Dkt. 1) in this case on June 30, 2021. Shortly thereafter, the Court ordered Plaintiff to show cause as to why the complaint should not be dismissed for lack of subject matter jurisdiction because the first complaint did not allege sufficient facts to establish diversity jurisdiction (Dkt. 5), and Plaintiff responded by filing her first amended complaint (Dkt. 6). After receiving Defendants' initial disclosures, Plaintiff moved for leave to file a second amended complaint (Dkt. 28), which the Court granted (Dkt. 38). Plaintiff then filed her second amended complaint (Dkt. 39) and the present motion to dismiss (Dkt. 44) soon followed.

The second amended complaint alleges the following facts. In June 2019, Plaintiff emailed Defendant Gustafson, a property manager and leasing agent for Defendant Hasbrouck, about viewing a rental home owned by Defendant Reid at 2085 Ashmere Dr. in Charlottesville, VA. (Dkt. 39 at ¶ 8). Plaintiff and her husband, Bruce Snell, met with Gustafson to tour and inspect the property. (*Id.* at ¶ 9). The Snells noted that the home needed to be cleaned, had extensive exterior mold and mildew, and had various cosmetic flaws, and Gustafson responded that the home had been unoccupied for over a year since the prior tenants vacated. (*Id.* at ¶ 11). Gustafson told the Snells that the owner was "desperate" to rent the property. (*Id.* at ¶ 12). The Snells inquired about whether there were any "structural problems or serious deficiencies" and one of the Defendants (it is not clear whether it was Gustafson or Reid) stated that the house was "safe and structurally sound" and had been "inspected and maintained properly." (*Id.* at ¶ 16). Plaintiff told Gustafson that Plaintiff was drawn to the freshly painted porch and stair railings.

(*Id.* at ¶ 17). In addition, Plaintiff inquired about the condition of the stairs leading to the backyard, because they appeared to have been replaced; Gustafson responded that the stairs were "in great shape." (*Id.* at ¶ 18).

The Snells signed a lease for the home on June 12, 2019, the day after the tour. (*Id.* at ¶ 23). After the Snells moved in, Plaintiff conducted another inspection of the home and took photographs of most areas of the home, including the backyard stairs and handrail, and witnessed no structural defense or dangerous conditions. (*Id.* at ¶ 24).

Five months later, Plaintiff's injury occurred:

> 25. [O]n November 29, 2019, Mrs. Snell was sitting on the stairs leading to the backyard watching her dogs, and when she began to stand up, she grabbed a wood stair rail for support. Suddenly, the rail literally tore open and collapsed, while partially disintegrating in her hand and onto the steps into a black powdered rotting mess.
>
> 26. As a devastating result, Mrs. Snell terrifyingly slid down the stairs, violently striking her right heel, Achilles tendon, ankle, buttocks, lower back, and hip as she screamed in pain, an event that her elderly husband, Mr. Snell, also witnessed and heard in horror.
>
> 27. Mrs. Snell was in a great deal of pain and was unable to get up on her own or bear weight on her right foot and leg, so Mr. Snell assisted her into a chair on the porch so that they could both inspect the stairs and railing system to determine what had happened and promptly report the incident, accident, injury, and noted defects to Ms. Gustafson and Hasbrouck.

(*Id.* at ¶¶ 25–27). The Snells inspected the collapsed stair railing and discovered that the thick white paint covering the railing concealed severely decayed and rotted wood underneath. (*Id.* at ¶ 28). In addition, they discovered that the bottom stair had collapsed and sunk due to the impact of Plaintiff's fall. (*Id.* at ¶ 29). When Defendant Hasbrouck directed a property inspector and maintenance team to inspect the issue, they discovered that the railing on the stairs and the entire backyard railing system had "totally rotted out," and that they would need to replace the whole railing system. (*Id.* at ¶¶ 31–32).

In an email to the Snells after the fall, Defendant Reid claimed that "[w]e completely repaired and painted, both inside and out, the spring of 2017 prior to the first tenant moving in July 2017" and specifically claimed that "the railings had been repaired and painted." (*Id.* at ¶ 31).

In the two-plus years since her fall, Plaintiff's injures to her buttocks, hips, and lower back have healed, but her injuries to her right heel, Achilles tendon, and ankle have resulted in chronic pain, stiffness, and walking impairment, requiring long-term physical and occupational therapy, and surgery on her Achilles tendon and ankle. (*Id.* at ¶¶ 45–48).

### III. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead

4

"only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

## IV. DISCUSSION

A. <u>Landlord's Liability for Negligent Repairs Performed Before Tenant Takes Possession</u>

Defendant Reid moves to dismiss just one portion of Plaintiff's second amended complaint: Count I, Plaintiff's negligence claim. (Dkt. 44). Count I alleges that "as the owner/landlord," Defendant Reid "had a common law duty to inform and warn the Snells about known and concealed defects rendering the use of the leased premises dangerous and to perform inspections, maintenance, or repairs with the ordinary care that a reasonable person would under the circumstances." (Dkt. 39 at ¶ 54). Defendant Reid argues that Virginia law does not impose tort liability on owners/landlords for negligent repairs made before a tenant takes possession of the leased premises, and therefore argues that Snell cannot stake a claim on the language that Reid "had a common law duty . . . to perform inspections, maintenance, or repairs with the ordinary care that a reasonable person would under the circumstances." (Dkt. 44 at 3). (Reid does not, apparently, challenge the first part of Count I—that she had a "duty to inform and warn the Snells about known and concealed defects rendering the use of the leased premises dangerous.") Reid argues that a landlord only assumes liability to a tenant for a negligent repair if the repair occurs *after* the tenant assumes possession of the leased premises. (*Id.* at 4).

Indeed, Virginia law is generally reluctant to impose tort liability on landlords for negligent repairs made before a tenant takes possession of a leasehold. *See Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 257 (Va. 2019); *Luedtke v. Phillips*, 56 S.E.2d 80, 81 (Va. 1949); *Caudill v. Gibson Fuel Co.*, 38 S.E.2d 465, 468–69 (Va. 1946). But there is an important

5

exception to that general reluctance: when there has been concealment or fraud.

> Where the right of possession and enjoyment of the leased premises passes to the lessee, the cases are practically agreed that, **in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant**, the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein.

*Luedtke*, 56 S.E.2d at 81 (citing *Caudill*, 38 S.E.2d at 469) (emphasis added).

The Virginia Supreme Court explained the rationale for this rule at length in its recent decision in *Tingler*, 834 S.E.2d at 244. In that case, the court addressed, *inter alia*, a family's negligence claims against the builder of their home, who they alleged constructed their home in a faulty manner, leading to water drainage build up which produced mold that injured the family. 843 S.E.2d at 251–53. The court held that the family's claims sounded in contract, not tort, because of the source-of-duty rule. The court noted that "[i]n Virginia, the question of liability cannot arise at all until it is well established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence." *Id.* at 253 (quoting *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 401 S.E.2d 878 (Va. 1991)). Then, "[i]n determining whether a cause of action sounds in tort or contract, or both, the source of duty violated must be ascertained." *Id.* at 254 (internal quotation marks omitted).

The source-of-duty rule, the court explained "mark[s] off the boundaries of civil liability and . . . protect[s] our jurisprudence from the modern trend that is intent on turning every breach of contract into a tort." *Id.* at 255 (internal quotation marks and citation omitted). "The source-of-duty rule finds its most secure roots in the historical distinction between the escalating degrees of blameworthiness recognized by the common-law doctrines of 'omission or non-feasance' on the one hand . . . and 'misfeasance' or malfeasance on the other." *Id.* at 256 (cleaned up). In the context of landlord-tenant disputes, this means that even where the landlord has a contractual

duty to the tenant, the landlord's liability for breach of that duty generally sounds in contract, not tort. *See id.* at 257.

But that rule is not without exception. Because the source-of-duty rule turns on the nonfeasance/misfeasance distinction, where a landlord acts with misfeasance by concealing or fraudulently misrepresenting some defect, even if that defect arose before the tenant took possession of the premises, then the landlord has a duty in negligence to the tenant. *Tingler*, 834 S.E.2d at 257–58 (holding that there was no duty in the case at hand because there had no misfeasance, only nonfeasance); *Luedtke*, 56 S.E.2d at 81.

Here, Plaintiff has clearly pled concealment or fraud. Plaintiff has pled that Defendants concealed the rot in the railing by covering it with white paint, and that Defendants deliberately misrepresented that the railing was in good repair. (*See* Dkt. 39 at ¶¶ 16–19; 21). Concealing mold in order to induce a tenant to begin or continue a lease is clearly misfeasance; the Virginia Supreme Court held that a plaintiff pled a valid negligence claim in *Sales v. Kecoughtan Housing Co.*, where the landlord entered a leased property to "repair the moldy areas of the property" but "continued growth and spread of mold in the property" by "painting over the mold" and then fraudulently claiming "that the repairs were adequate, that the mold problem had been remedied and that the property was safe for habitation, with the intent of inducing [the plaintiff] to continue in his tenancy in the property." 690 S.E.2d 91, 93–94 (2010).

At bottom, this is a case of misfeasance, not nonfeasance. Therefore, the fact that the repairs in question took place before Plaintiff took possession of the rental home does not defeat her negligence claim.

### B. Landlord's Liability for Failure to Make Repairs

Further, Defendant Reid argues that Virginia does not recognize a cause of action in tort

7

for a landlord's failure to make repairs, even if the landlord assumes the duty to repair the property by contract. (*Id.* at 6). While it is true that under Virginia law, a landlord is generally not liable in tort (rather than contract) for failure to make contractually required repairs regardless of the foreseeability of the harm to the tenant (*Tingler*, 834 S.E.2d at 257), that is simply not what Plaintiff alleges. Nowhere in Count I does Plaintiff claim a cause of action arising from Defendants' failure to make repairs. Rather, Plaintiff alleges a cause of action for negligence arising from Defendants' misfeasance in concealing the rotten railing. (*See* Dkt. 39 at ¶¶ 53–62). Defendant Reid's argument here is an argument in response to a claim that Plaintiff has not made.

## V. CONCLUSION

For the reasons above, the Court DENIES Defendant Reid's motion to dismiss, Dkt. 44.

The Clerk of Court is directed to send a copy of this opinion and order to all counsel of record.

Entered this 12th day of April 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE