**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARCIA M. SNELL,<br><br>        *Plaintiff*,<br><br>v.<br><br>REBECCA A. REID, *et al.*,<br><br>        *Defendants*. | CASE NO. 3:21-cv-24<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

## I. Introduction

This is a state law personal injury case for which this Court has diversity jurisdiction. Plaintiff Marcia Snell's second amended complaint alleges that Snell fell and injured herself when she tried to support herself on a wooden railing along the stairs in her rental home. (Dkt. 39 at ¶¶ 25–27). Snell alleges that she discovered that the wood had rotted out but had been covered with a fresh layer of white paint so that it was not apparent that the railing was fragile. (Dkt. 39 at ¶¶ 28–30). The second amended complaint names three defendants: Rebecca A. Reid (the owner of the home), Buffy Jo Gustafson (the home's property manager and Snell's leasing agent), and Hasbrouck Real Estate Corporation (the property management company). The second amended complaint pleads five causes of action: negligence (Count I), negligence per se (Count II), fraudulent concealment (Count III), fraud (Count IV), and constructive fraud (Count V). The Court previously denied Defendant Reid's motion to dismiss, Dkt. 120.

This opinion covers six pretrial motions argued at a hearing on June 23, 2022:

- Plaintiff's Motion for Default Judgment for Spoliation of Evidence, Dkt. 121.
- Plaintiff's Motion for Partial Summary Judgment, Dkt. 161.
- Plaintiff's Motion to Exclude the Expert Report and Testimony of David Uliana, P.E.,

Dkt. 163.

- Plaintiff's Motion to Exclude the Expert Report and Testimony of Michael F. Bowen DPM, Dkt. 165.

- Defendants Gustafson and Hasbrouck's Motion for Summary Judgment, Dkt. 167.

- Defedant Reid's Motion for Summary Judgment, Dkt. 169.

## II. Plaintiff's Motion for Default Judgment for Spoliation of Evidence, Dkt. 121

### A. Background

Snell's slip and fall occurred on November 29, 2019. (Dkt. 122 at 3). On the same day, after the fall, she reported the accident to Defendant Hasbrouck through its online maintenance request system and to Defendant Gustafson by email. (*Id.* at 3; Ex. A). On December 1, Snell emailed Hasbrouck and Gustafson a photo album with photos of the stairs and the scene of her accident. (*Id.* at 3; Ex. B). Gustafson replied and said that she would send a Hasbrouck employee to inspect the stairs. (*Id.*). The parties followed up with back-and-forth emails over the next week. (*Id.* at 3; Ex. C, D).

On December 6, two Hasbrouck employees went to Snell's home to inspect the stairs. (*Id.* at 4; Ex. E ¶ 8). Snell's husband, Bruce, met with and spoke to them because Snell was unable to walk because of the accident. (*Id.* at Ex. E ¶ 9). The employees removed and replaced the stair railings and took the damaged railing and baluster with them when they left. (*Id.* at ¶¶ 10, 12). Bruce Snell claims that the employees told him that they would take the damaged wood pieces but did not tell him that they would destroy them. (*Id.*). Neither party has deposed so the sole evidence in the record relating to their statements comes from Bruce Snell's affidavit. (*Id.* at 5).

Snell did not contact Defendant Reid in the aftermath of her accident, and the evidence in the record shows that Defendant Reid did not know about the accident until August 2020. (*Id.* at

2

5; Dkt. 142 at 5).

Snell sent demand letters to Defendants in June 2021 and filed the Complaint in the present case later that same month. (Dkt. 122 at 6). Prior to sending the demand letters, Snell never made any explicit threats of litigation, and neither she nor her husband ever requested that Defendants preserve the railing and baluster. (*See id.*).

### B.  Legal Standard

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. *Id*. at 591. "When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted, a trial court may use" its inherent power to control the judicial process "to determine an appropriate sanction." *King v. Am. Power Conversion Corp.*, 181 Fed. App'x 373, 376 (4th Cir. May 17, 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); see also *Silvestri*, 271 F.3d at 590.

If the movant satisfies the threshold requirements for establishing that spoliation occurred, the court must determine whether sanctions are appropriate under its inherent authority. *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). "Because of the extreme nature of dismissal as a sanction for spoliation, it is usually appropriate only in circumstances of bad faith or other like action." *King v. Am. Power Conversion Corp.*, 181 Fed. Appx. 373, 376 (4th Cir. 2006). "[T]he [D]istrict [C]ourt should examine both the spoliator's conduct and the prejudice caused by the spoliation" and "default judgment should be imposed

only if a lesser sanction will not perform the necessary function." *Nucor Corp. v. Bell*, 251 F.R.D. 191, 201 (D. S.C. 2008) (internal citations omitted).

If the spoliated evidence was the sole physical evidence to prove or defend against a case, the Court should consider extreme remedies even if the spoliation was not in bad faith. *Silvestri*, 271 F.3d at 593 ("[E]ven when conduct is less culpable, dismissal may be necessary if the prejudice to the [movant] is extraordinary. . . . sometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness"). Whatever sanction the Court chooses to impose, it "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id.* at 590.

### C. Discussion

The Court must answer up to three questions here: (1) whether Defendants spoliated evidence, (2) if so, what the appropriate remedy is, and (3) whether Hasbrouck and Gustafson's actions can be imputed to Reid such that sanctions against Reid are also appropriate.

Whether Defendants spoliated evidence turns solely on the issue of whether they reasonably should have foreseen litigation prior to when the maintenance workers destroyed the railing. *Silvestri*, 271 F.3d at 590. Before the day that the railing and baluster were removed, Snell had informed Hasbrouck and Gustafson that she had slipped and fallen on the stairs and that she believed the stairs were rotted out, but Snell had not suggested that she was considering litigation. (*See* Dkt. 122 at 3–5). Her notice, as Defendants note, came in the form of a maintenance request. (*Id.* at Ex. A; Dkt. 142 at 2). Snell's communication to Defendants Hasbrouck and Gustafson read as follows:

> We also want to inform you that when Marcy went down the steps to the front side of the house, one of the railing supports collapsed and she slipped because the stairs and railings are also uneven and falling apart and she was also frightened.

4

> When you have someone inspect, you will see that the collapsed wood railing is so rotten that it is black and just disintegrated. Marcy has a bad back and hip and this has not helped her at all. It appears that rotten wood was just painted over because Marcy put very little weight, if at all, on the railing, and we fear others could be injured as the whole stair system appears ready to collapse. The owner and Hasbrouck must take the necessary steps to maintain this home as it is not safe, obviously. . .

(Dkt. 122 at Ex. A).

> Here are photos showing the steps and railings that obviously are crumbling, tearing away from any supports, and falling apart. Very dangerous.

(*Id.* at Ex. B).

> We have waited nearly a week for someone to repair or replace these dangerous steps that Marcia fell on because they are falling apart. . . We don't understand why you don't take this hazard seriously since my wife's back is still hurting from the fall.

(*Id.* at Ex. D).

The Court holds that these communications did not create a reasonable likelihood of litigation, and thus holds that Defendants did not spoliate evidence. Although the communications made clear how dangerous Snell believed the stairs were, the fact that she was injured and asked for the stairs to be repaired does not in itself create a reasonable likelihood of litigation. The Court notes these considerations in particular: (1) Snell never made any explicit or implicit threats of litigation, (2) Snell never asked Defendants to preserve the railing and baluster, or the broken pieces thereof, (3) Snell requested that Defendants inspect and repair the railing and baluster, which necessarily carried the possibility of Defendants removing the railing and baluster, and (4) the prejudice of the loss of the physical evidence is not very high because Snell has photos of them after her fall and will be able to introduce those photos, as well has her own descriptions of the stairs' condition, at trial.

Therefore, Plaintiff's spoliation motion at Dkt. 121 is denied.

### III. Plaintiff's Motion for Partial Summary Judgment, Dkt. 161

The next motion is Plaintiff's summary judgment motion, Dkt. 161, in which she moves for summary judgment on Defendants' affirmative defenses of assumption of risk, contributory negligence, and failure to mitigate damages, as well as for her negligence *per se* claim.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact . . . by offering sufficient proof in the form of admissible evidence." *Id*. (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id*. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for

6

the non-movant. *Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cmty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

A. Assumption of Risk

Under Virginia law, a Defendant can make out the affirmative defense of assumption of risk by showing (1) the victim fully understood the nature and severity of the risk involved; and (2) the victim chose to participate in the activity anyway, accepting the risk voluntarily. *Greater Richmond Transit Co. v. Wilkerson*, 406 S.E.2d 28, 32–33 (Va. 1991). Assumption of the risk involves that the nature and extent of the risk be fully appreciate and the risk voluntarily incurred. *Id.*

Plaintiff argues that there is nothing in the pleadings that could great a genuine issue that she assumed the risk of falling on the stairs by using them. (*See* Dkt. 162).

Defendants argue (1) Snell assumed the risk because she is old and has pre-existing health problems, and had previously expressed concern about the stairs, and (2) Snell assumed the risk by using the stairs in an "unconventional manner" (by pulling herself up on a non-weight bearing baluster). (*See* Dkt. 175, 176). The first argument does not put assumption of risk into dispute because someone does not assume risk simply be being old or using stairs that she believed to be in bad condition, especially where those stairs were the only means to the second story of her home. *See Payton v. Rowland*, 155 S.E.2d 36, 38 (Va. 1967) ("[a] tenant is not contributorily negligent as a matter of law when she walks across a porch that affords the only practicable access to the back yard, even though she knows the porch is in bad condition."). The second argument cannot possibly sustain a finding that Snell "fully understood the nature and severity of the risk involved" because nothing in the record shows that Snell had any prior knowledge that the railing and baluster had rotten out beneath paint.

The bottom line is that there is no evidence in the record that could support a reasonable jury finding assumption of the risk. Therefore, the Court will grant Plaintiff's summary judgment motion with respect to assumption of the risk.

### B.  Contributory Negligence

Under Virginia law, a contributory negligence defense bars a Plaintiff's claim if she failed to act as a reasonable person would have acted for her own safety under the circumstances and if plaintiff's negligence was a proximate cause of her injury. *Jenkins v. Pyles*, 611 S.E.2d 404, 407 (Va. 2005).

Defendants argue that a reasonable jury could find that Plaintiff was contributorily negligent because she hoisted herself up from the stairs in an "unconventional manner." (Dkt. 175 at 3–4; Dkt. 176 at 6–8). Defendants have pointed to evidence in the record that Plaintiff has testified that she "didn't pay attention to how she grabbed" the non-weight bearing baluster. (Ex. 2 to Dkt. 175 at 59). The Court holds that Defendants' argument about how Plaintiff hoisted herself in an "unconventional manner," creates a genuine dispute of material fact on contributory negligence. The Court does not, however, credit Defendants' argument that Plaintiff was contributorily negligent because of her age. Defendants Gustafson and Hasbrouck argue that Plaintiff was contributorily negligent because she "understood at the time that she had difficulty traversing any stairs at all due to her physical abilities and that her continued use of stairs could result in injury or death." (Dkt. 176 at 6). That is an untenable argument. Plaintiff's core argument in this case is that she fell because Defendants concealed that the railing was rotten, not that the stairs were inherently dangerous—and it would not make a difference if she *did* know that the stairs were dangerous if they were her only way to get to and from the second level of her home. *Payton*, 155 S.E.2d at 38. And the fact that Plaintiff is old and perhaps more prone

to the average person to injury does not in any way render her contributorily negligent just for using the stairs in her own home because it is not reasonable to expect a person of advanced age to simply not use the stairs in their home under any circumstances solely because of their age.

The Court will deny this portion of Plaintiff's partial summary judgment motion.

### C. Mitigation of Damages

Virginia law holds that it is the duty of one who claims to have been injured by the wrongful or negligent act of another to exercise reasonable care and diligence to avoid loss and to minimize or lessen the resulting damage, and to the extent that her damages are the result of her active and unreasonable enhancement thereof or are due to her failure to exercise such care and diligence, she cannot recover. *Monahan v. Obici Med. Mgmt. Servs., Inc.*, 628 S.E.2d 330, 339 (Va. 2006).

Defendants note that the record reflects a three-month gap between Plaintiff's accident and when she first sought medical care. (Ex. 5 to Dkt. 175). This is enough to create a genuine dispute on the issue. Defendants also note that Plaintiff decided to wait to see a particular provider, Dr. Blum, and passed up the opportunity to see other providers in the meantime. (Ex. 2 to Dkt. 175 at 150). That fact also independently creates a genuine dispute on mitigation of damages.

Plaintiff has not met her burden to show that there is no genuine dispute of material fact on mitigation of damages. Therefore, the Court will deny Plaintiff's motion with respect to mitigation of damages.

### D. Negligence *Per Se*

In Virginia, negligence *per se* "requires a showing that the tortfeasor had a duty of care to the plaintiff, the standard of care was set by statute, the tortfeasor engaged in acts that violated

9

the standard of care set out in the statute, the statute was enacted for public health and safety reasons, the plaintiff was a member of the class protected by the statute, the injury was the sort intended to be covered by the statute, and the violation of the statute was the proximate cause of the injury." *Stewart v. Holland Family Props.*, 726 S.E.2d 251, 254 (Va. 2012).

There are clearly material issues in dispute here. First is whether the railing and stairs were in violation of the statute that Plaintiff cites, the Virginia Maintenance Code. It is not undisputed that the railing and baluster were even defective. (Dkt. 175 at 9). Second is whether Plaintiff's fall was even the cause of her injuries—Defendants' expert claims that at least some of Plaintiff's chronic health problems preexisted her fall. (*Id.* at 11).

Plaintiff has not met her burden to show that there is no genuine dispute of material fact on her negligence *per se* claim. Therefore, the Court will deny this portion of her partial summary judgment motion.

### IV.  Plaintiff's *Daubert* Motions, Dkt. 163 and 165

Plaintiff has filed two *Daubert* motions to exclude Defendants' expert witnesses David Uliana, P.E. (Dkt. 163) and Michael F. Bowen, DPM (Dkt. 165). Neither one identifies anything that would render the experts' opinions inadmissible. Plaintiff's arguments boil down to two issues: (1) that Defendants spoliated evidence, so any opinions in which the experts did not directly examine the railing and baluster are unreliable, and (2) that Defendants' expert reports are unreliable because Plaintiff could contest their findings. The first argument is resolved by the Court's holding that Defendants did not spoliate evidence. The second argument simply means that Plaintiff can cross-examine Defendants' expert witnesses; the fact that someone might disagree with their findings does not render them "unreliable" such that exclusion would be warranted.

Therefore, the Court will deny Plaintiff's *Daubert* motions at Dkt. 163 and 165.

## V. Defendants' Summary Judgment Motions, Dkt. 167 and 169

Defendants have brought two summary judgment motions arguing that they are entitled to summary judgment on each of Plaintiff's claims, Dkt. 167 (Defendants Hasbrouck and Gustafson's motion) and 169 (Defendant Reid's motion).

### A. Timeliness and Adequacy of Defendant Reid's Motion

The Court notes that Defendant Reid submitted her motion for summary judgment a day late, and that the motion simply adopted the arguments of Defendants Hasbrouck and Gustafson (who timely filed their motion for summary judgment). (*See* Dkt. 169). The Court would ordinarily excuse the one-day delay, but notes that Defendant Reid (1) has offered no excuse for the delay, and (2) has attempted to incorporate Defendants Hasbrouck and Gustafson's arguments, even though many of Hasbrouck and Gustafson's arguments are particular to them and inapplicable to Defendant Reid (Hasbrouck and Gustafson argue that they can not be held liable for most of Plaintiff's claims because they were acting as Defendant Reid's agents).

Thus, while the Court will—perhaps unwarrantedly—extend Defendant Reid the benefit of the doubt and not hold the time delay against her, the Court must hold that she has waived any arguments not directly applicable to all Defendants.

### B. Whether Plaintiff Has a Cause of Action for Negligence

Defendants Gustafson and Hasbrouck first move for summary judgment on Plaintiff's negligence claim, arguing that the facts as alleged cannot make out a negligence claim under Virginia law because Defendants had no duty to Plaintiff for negligent repairs made before Plaintiff took possession of the rental home. (Dkt. 168 at 10–15). The Court previously addressed this same issue in Defendant Reid's motion to dismiss. (*See* Dkt. 120). But Hasbrouck

and Gustafson have not previously raised it, and Hasbrouck and Gustafson have provided several new arguments with respect to the issue that the Court had not previously considered in ruling on the motion to dismiss.

As this Court discussed in its opinion on the motion to dismiss, Virginia law generally does not impose tort liability on landlords for negligent repairs made before a tenant takes possession of a leasehold. *See Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 257 (Va. 2019); *Luedtke v. Phillips*, 56 S.E.2d 80, 81 (Va. 1949); *Caudill v. Gibson Fuel Co.*, 38 S.E.2d 465, 468–69 (Va. 1946). But there is an important exception to that general rule—when there has been fraud or fraudulent concealment.

> Where the right of possession and enjoyment of the leased premises passes to the lessee, the cases are practically agreed that, **in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant**, the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein.

*Luedtke*, 56 S.E.2d at 81 (citing *Caudill*, 38 S.E.2d at 469) (emphasis added).

There is no question that Plaintiff has pled fraud/fraudulent concealment here, and that Plaintiff has viable causes of action for those torts. But it is not entirely clear whether the fraud or concealment exception to the general rule that a plaintiff has no cause of action in negligence for the landlord's negligent repairs made prior to plaintiff taking possession of the leasehold means one of two things: (1) that when the plaintiff can prove that a landlord committed fraud or concealment prior to the tenant's possession, that the plaintiff has no cause of action in negligence but does have a cause of action in fraud/fraudulent concealment, or (2) that the landlord's fraud or concealment creates a duty *in negligence* to the plaintiff, meaning that the plaintiff has a cause of action in negligence in addition to causes of action for fraud/fraudulent concealment.

12

In its opinion on the motion to dismiss, this Court held the latter, based on the discussions of the exception in the Virginia Supreme Court's cases on the issue—*Tingler*, 834 S.E.2d 244; *Luedtke*, 56 S.E.2d 80; and *Caudill*, 38 S.E.2d 465. *Tingler* was particularly instructive, because the Virginia Supreme Court's described there that the fraud/fraudulent concealment exception arises from the source-of-duty rule, which itself turns on the nonfeasance/misfeasance distinction. In other words, the *Tingler* explanation for why a tenant has no cause of action in negligence for a landlord's negligent repairs made prior to the tenant's possession of the leaseholds is that the landlord has *no duty* to the tenant for those repairs. *Tingler*, 834 S.E.2d at 257 ("[N]o tort duty arises simply because the landlord fails to make the contractually required repairs irrespective of the foreseeability of the harm to the tenant."). The *Tingler* court emphasized that its analysis was whether a defendant had a duty *in negligence* (not just general tort) to a plaintiff (834 S.E.2d at 253 ("[t]he question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence.")), but with respect to the fraud/fraudulent concealment exception, the court merely held that the exception creates a duty in a landlord to a tenant "in tort," not specifically in negligence (*id.* at 257). In its opinion on Defendant Reid's motion to dismiss, then, this Court took *Tingler* to mean that the fraud/fraudulent exception creates a duty *in negligence* to the tenant and held that Plaintiff here had a cause of action in negligence. (*See* Dkt. 120).

But as Defendants Hasbrouck and Gustafson have pointed out in their briefings on this motion, before *Tingler* the Virginia Supreme Court had more strongly indicated that the fraud/fraudulent concealment meant only that the plaintiff had fraud/fraudulent concealment causes of action, not a negligence cause of action. *Caudill*, 38 S.E. 2d at 469 ("Generally it is

13

held that, where complete possession is surrendered to the lessee, no action of tort can be maintained against the lessor except for fraud or concealment.").

So, in sum, it is not entirely clear under current Virginia law whether the fraud/fraudulent concealment exception to the rule that a landlord has no duty to a tenant for negligent repairs made prior to the tenant's possession of the leaseholds means (1) the plaintiff just has causes of action for fraud/fraudulent concealment, or (2) the plaintiff has a cause of action in negligence as well as causes of action for fraud/fraudulent concealment.

Because the above-cited language from *Caudill* is the most direct language on either side of the issue, the Court revises its earlier holding on the motion to dismiss and holds that Plaintiff here cannot make out a negligence claim. Plus, at a more practical level, even were it the case that Plaintiff had a cause of action in negligence due to the fraud/fraudulent concealment exception, Plaintiff would have to prove fraud/fraudulent concealment in order to prove negligence—rendering the negligence claim redundant.

This holding applies to both Plaintiff's ordinary negligence claim, Count I, and her negligence *per se* claim, Count II, because the only distinction between the two is that a statute sets the standard of care for the negligence *per se* claim; it does not create a duty. *See Steward v. Holland Family Properties, LLC*, 726 S.E.2d 251, 254 (Va. 2012) (describing Virginia law for negligence *per se* claims and noting that "a statute setting the standard of care does not create the duty of care.").

Thus, the Court holds that, while Plaintiff has viable causes of action for fraud and fraudulent concealment, she has no independent cause of action in negligence. The Court will grant all three defendants summary judgment on Plaintiff's negligence claims, Counts I and II.

### C. Whether Hasbrouck and Gustafson Can be Held Liable for Fraud Claims

Next, Defendants Hasbrouck and Gustafson move for summary judgment on the fraud-related claims, Counts III (fraudulent concealment), Count IV (fraud), and Count V (constructive fraud). Defendant Reid has incorporated these arguments into her summary judgment motion, but Hasbrouck and Gustafson's arguments are not applicable to Reid, so the Court will not consider them with respect to her.

As a preliminary matter, Hasbrouck and Gustafson cannot be held liable on these counts merely because they acted as Reid's agents. Virginia law does not hold a landlord's agents liable for the landlord's torts; the agent must have committed some independent tortious act. *See Dixon v. S. Bos. Corp.*, 2005 WL 3194395, at *1 (Va. Cir. 2005) (holding in failure to warn of lead paint case that disclosed agents of landlord only liable for their own positive acts of negligence, not for the actions of the landlord) (citing *Turner v. Carneal*, 159 S.E. 72, 73 (Va. 1931) (rejecting argument that rental agents were liable for injury to prospective lessee because agents "had had the renting of the premises for a period of years" and therefore must have known of the dangerous condition; burden on plaintiffs "to show a positive act of negligence" by defendants)). Thus, Hasbrouck and Gustafson can only be held liable under Counts III through V if they committed some tort themselves.

Put simply, there is not a single piece of evidence in the record that Gustafson and Hasbrouck were involved in the allegation that gives rise to those causes of action—that the rotten railing was painted over. Thus, there is no genuine dispute of material fact about whether Gustafson and Hasbrouck committed fraudulent concealment (Count III), fraud (Count IV), or constructive fraud (Count V). These claims cannot go forward.

The elements for each of those causes of action are as follows. To show fraud (Count IV),

15

a plaintiff must establish by clear and convincing evidence that a defendant intentionally and knowingly made a false representation of material fact with the intent to mislead, that the plaintiff relied on the representation, and that she suffered damages as a result. *Elliott v. Shore Stop, Inc.*, 384 S.E.2d 752, 756 (Va. 1989). Fraudulent concealment (Count III) has the same elements as traditional fraud except, instead of a knowing or intentional affirmative false representation, a knowing and intentional affirmative yet, silent, concealment of a material fact with the intent to mislead with attendant resulting damages will constitute fraud. *See Van Deusen*, 441 S.E.2d 207, 209–10 (Va. 1994). Constructive fraud (Count V) "is defined as 'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.'" *Guerin v. Mechanicsville Props., LLC*, 2010 WL 11020460, at *2 (Va. Cir. 2010) (quoting *Jackson v. Seymour*, 193 Va. 735, 741-42 (1952)). For constructive fraud, the false representation need only be made innocently or negligently, rather than intentionally and knowingly as in traditional fraud. *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999)

Plaintiff's claims on Counts III through V rest on the allegation that Defendants painted over the rotten stair railing before she took possession of the home, and later misled her into believing that the stairs and railing were in good shape. (Dkt. 39 at ¶¶ 25–30). There is evidence in the record that creates a genuine dispute of material fact that Defendant Reid had the stairs and railing painted sometime between January and May 2017, before Plaintiff took possession of the home, and—critically—before Reid entered into a contract with Hasbrouck to manage the rental property. (*See* Ex. B to Dkt. 168 at 14–35). There is no evidence whatsoever in the record to support the facts that (1) Hasbrouck and Gustafson painted the railing and stairs, (2) that

Hasbrouck and Gustafson knew that the railing had been rotten before it was painted, or (3) that Hasbrouck and Gustafson knowingly misled Plaintiff about the condition of the stairs. Plaintiff's sole argument here is that the stairs might have been painted some time later, and that Defendants' affidavits to the contrary are unreliable (*see* Dkt. 210 at 5–7), but it is not enough for Plaintiff to allege in a conclusory manner that Defendants might have painted the stairs again, or known about the prior painting, without putting any affirmative evidence into the record. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (holding that a plaintiff cannot defeat summary judgment merely by claiming that defendants are not credible without submitting affirmative evidence to prove plaintiff's claims).

Therefore, the Court will grant Defendants Hasbrouck and Gustafson summary judgment on Counts III, IV, and V.

## VI. Conclusion

As a result of this opinion and the accompanying order, the Court grants all Defendants summary judgment on Counts I and II, and grants Defendants Hasbrouck and Gustafson summary judgment on Counts III, IV, and V. This leaves just Counts III, IV, and V against Defendant Reid. The Court also grants Plaintiff summary judgment on the issue of assumption of risk.

The Clerk of Court is directed to send a copy of this opinion to all counsel of record.

Entered this 18th day of July 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE