CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 01, 2024
LAURA A. AUSTIN, CLERK
BY   s/ S. MELVIN
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARCIA M. SNELL,<br><br>                      *Plaintiff,*<br><br>v.<br><br>BUFFY JO GUSTAFSON, *et al.*,<br><br>                     *Defendants.* | CASE NO. 3:21-cv-00024<br><br><u>OPINION</u><br><br>JUDGE NORMAN K. MOON |

At the outset of this litigation, Plaintiff Marcia Snell raised five causes of action against three defendants based on the injuries she suffered after a hand railing gave way in her home. Following several years of litigation before this Court and the Fourth Circuit, Plaintiff's sole remaining claim is that Defendants Buffo Jo Gustafson and Hasbrouck Real Estate Corporation are liable for constructive fraud based on Gustafson's alleged misrepresentation about the state of the railing. Related to this claim of constructive fraud, the parties have made the following motions which are now before the Court:

(i)    Defendants' Renewed Motion for Summary Judgment (Dkt. 420)

(ii)    Plaintiff's Renewed Motion for Summary Judgment (Dkt. 423)

(iii)    Plaintiff's Motion in Limine to Admit Former Expert Trial Testimony (Dkt. 426)

(iv)    Defendants' Motion to Amend Answer to Add Affirmative Defenses (Dkt. 434)

(v)    Defendants' Motion for Summary Judgment on Res Judicata (Dkt. 438)

(vi)    Plaintiff's Motion to Exclude Expert Testimony of Michael Bowen (Dkt. 441)

(vii)    Plaintiff's Motion to Exclude Expert Testimony of David Uliana (Dkt. 443)

 (viii) Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment on Res Judicata and Collateral Estoppel (Dkt. 446)

After reviewing the briefing and conducting a hearing for each of these motions, the Court finds that Defendants are correct on one issue which determines all the rest: Plaintiff's claim for constructive fraud is barred by res judicata, and Defendants' motion for summary judgment on these grounds must be granted. *See* Dkt. 438. This finding renders all other motions before the Court moot. Accordingly, for the reasons set forth below, the Court **GRANTS** Dkts. 434 and 438, and the Court **DISMISSES** as moot Dkts. 420, 423, 426, 441, 443, and 446.

## I. Background

This is a state law personal injury case for which this Court has diversity jurisdiction.[1] *See* Dkt. 39 at 1. Plaintiff Marcia Snell's second amended complaint alleges that Snell fell and injured herself when a wooden baluster gave way along the stairs in her rental home. Dkt. 39 at ¶¶ 25–27. Plaintiff alleges that she discovered that the wood had rotted out but had been covered with a fresh layer of white paint so that it was not apparent that the railing was fragile. Dkt. 39 at ¶ 28. She further alleges that she had been led to believe the subject stairs and railings were safe and structurally sound, based on statements that were made during a pre-rental walkthrough of the property. Dkt. 39 at ¶ 19. Plaintiff claims that her fall resulted in multiple injuries, the need for invasive surgery on her foot, and permanent impairment. Dkt. 39 at ¶¶ 45–48.

Based on these allegations, Plaintiff's second amended complaint pleaded five causes of action: negligence (Count I), negligence per se (Count II), fraudulent concealment (Count III), fraud (Count IV), and constructive fraud (Count V). *See* Dkt. 39. The complaint named three

---

[1] Because (i) this case is before the Court on remand from the Fourth Circuit; (ii) the underlying facts and allegations of the case have not changed since remand; and (iii) the Court has decided to dismiss Plaintiff's claim on Defendants' motion for summary judgment, the Court draws the facts in this section from Plaintiff's complaint and the parties' summary judgment filings and finds that these facts are either undisputed or are viewed in favor of Plaintiff as the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

defendants: Rebecca A. Reid (the owner of the home), Hasbrouck Real Estate Corporation (the property management company hired by Reid to manage the unit), and Buffy Jo Gustafson (Hasbrouck employee and leasing agent assigned to the home). *See* Dkt. 39.

At issue in the instant case is Plaintiff's claim for constructive fraud. Plaintiff originally alleged that all three defendants were liable for constructive fraud, and Plaintiff's charge against each defendant stemmed from the same set of facts—false statements that Defendant Gustafson allegedly made during a pre-rental walkthrough. Specifically, Plaintiff alleges that "Gustafson stated that the porch, stairs, and stair rail systems had been maintained and painted recently and confirmed that they, too, were 'in great shape' and 'structurally sound' and have been 'regularly inspected and properly maintained.'" *See* Dkt. 39 at ¶ 19. Plaintiff further alleges that she "justifiably relied upon" these misrepresentations when signing the lease. Dkt. 39 at ¶ 23. Accordingly, Plaintiff sought to hold Defendant Reid liable for Gustafson's statements on the basis that Gustafson was acting as Reid's agent in making the false statements, *i.e.,* that Reid was liable as Gustafson's principal. Plaintiff sought to hold Gustafson and Hasbrouck directly liable for these statements.

This Court granted Defendants Gustafson and Hasbrouck summary judgment on the constructive fraud claim and dismissed them from the case. Dkt. 250. Thereafter, Plaintiff's case against Reid proceeded to a jury trial—solely on the constructive fraud claim. At trial, the jury was instructed on Reid's liability under a principal-agent theory. The jury was instructed to find Reid "liable for the fraudulent or deceitful acts of her agent [Gustafson] committed as an incident to and during the performance of an act which is within the scope of the agent's authority." *See* Dkt. 292, Final Jury Instructions, at 14. The jury returned a verdict in favor of Reid, finding that she was not liable for constructive fraud, and the Court entered judgment accordingly. Dkt. 296; Dkt. 307.

Plaintiff appealed to the Fourth Circuit. Dkt. 310. The Fourth Circuit affirmed in part and reversed in part. *Snell v. Reid*, No. 22-1869, 2024 WL 2815061 (4th Cir. June 3, 2024). Pertinent here, the Fourth Circuit vacated the Court's grant of summary judgment to Gustafson and Hasbrouck on Plaintiff's constructive fraud claim. *Snell*, 2024 WL 2815061, at *2. The Fourth Circuit held that this Court erred when it "rejected Snell's constructive fraud claim against the management defendants due to those defendants' lack of involvement in or knowledge of the painting or repair of the subject stairs." *Id*. The Fourth Circuit explained that "Snell's constructive fraud claim against the management defendants centered around Gustafson's alleged statements during a pre-rental walkthrough," and that, for purposes of constructive fraud, "it is irrelevant whether Gustafson knew those statements were false at the time she allegedly made them." *Id*. Accordingly, the case was remanded for further proceedings consistent with the Fourth Circuit opinion, and this Court entered a scheduling order to docket Plaintiff's constructive fraud claim against Defendants as the sole remaining cause of action in the case. Dkt. 413.

Substantial pre-trial motions practice ensued. Both parties moved for summary judgment, and Plaintiff filed various motions in limine to admit and exclude evidence. Relevant here, Defendants moved for leave to amend their pleadings to add the affirmative defense of res judicata. Dkt. 434. Defendants then moved for summary judgment based on res judicata. Dkt. 438. The Court held a hearing on Defendants' motions related to res judicata, as well as the six other motions filed by Plaintiff and Defendants. The Court now addresses Defendants' motion for leave to amend their answer to plead res judicata, followed by Defendants' motion for summary judgment based on res judicata. Dkt. 434; Dkt. 438.

## II. Defendants' Motion for Leave to Amend Answer to Plead Res Judicata as Affirmative Defense (Dkt. 434)

Generally, a party must plead affirmative defenses in her answer, including the affirmative defense of res judicata, or such defenses are waived. *See* Fed. R. Civ. P. 8(c) (listing res judicata as an affirmative defense). Where not properly pleaded and where not amended as a matter of course, a party may amend its pleading to add affirmative defenses "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court should "freely give leave when justice so requires," *id*., such that leave to amend should only be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509–10 (4th Cir. 1986); *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

As to prejudice, "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). Amendment is more likely prejudicial if it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Id*. "An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id*.

Finally, although Rule 15(a)(2) advocates that the Court should "freely" afford parties leave to amend, Rule 16(b)(4) dictates that a scheduling order set by the Court "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

Here, Defendants seek leave to amend their answer to plead the affirmative defense of res judicata, *see* Dkt. 434, which certainly implicates Rule 15 and may also implicate Rule 16.[2]

---

[2] The applicability of Rule 16 is complicated by the fact that Defendants make this motion following the Fourth Circuit's remand, such that the original pretrial scheduling order is moot. This Court's original scheduling

Assuming that both are implicated, the Court finds that Defendants have met both requirements. As Defendants point out in their motion, Defendants would not have been able to assert the defense of res judicata in their answer since these defenses did not exist at that time. Res judicata only arose as a possible defense after the jury returned a verdict exonerating Reid and the Fourth Circuit affirmed that judgment. *See Faison v. Hudson*, 417 S.E.2d 302, 305 (Va. 1992) ("A judgment is not final for the purposes of res judicata or collateral estoppel when it is being appealed."). Although Defendants waited several months after the judgment had become final to file their motion,[3] the Court does not find this to be prejudicial to Plaintiff. At that time, trial in this matter was still three months away, and, more importantly, responding to the defense of res judicata did not require Plaintiff to gather new evidence or analyze new facts. All of the underlying facts of the case remained the same. Plaintiff needed only consider how the now-affirmed judgment in favor of Reid affected her claim going forward. Furthermore, Defendants' assertion of res judicata was not futile or made in bad faith. Defendants' res judicata argument is colorable and is not "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Finally, for similar reasons, the Court finds that good cause exists under Rule 16(b)(4) to allow the amendment in contravention of any applicable scheduling order. As noted, Defendants could not have pleaded this defense in compliance with the original scheduling order, because the defense of res judicata did not exist at that time. And as to the second scheduling order, Defendants

---

order stated that "[t]he court shall consider a party's motion to amend pleadings in accordance with Rule 15 of the Federal Rules of Civil Procedure. Except for good cause shown, any such motion must be filed no later than 45 days from the date of this order." *See* Dkt. 17. Following remand, the Court entered a second scheduling order on July 10, 2024. Dkt. 413. However, this order was silent as to the deadline for motions to amend. Dkt. 413. Defendants moved for leave to amend on September 13, 2024, well past the deadline in the original scheduling order, and also more than 45 days past the entry of the post-remand scheduling order. Accordingly, if the deadlines from the original order are construed to apply to the subsequent pretrial order, Defendants must demonstrate good cause for modifying the scheduling order.

3      The Fourth Circuit opinion was filed on June 03, 2024. Dkt. 408. It took effect on July 10, 2024. *See* Dkt. 413. Defendants moved for leave on September 13, 2024. Dkt. 434.

cannot be prevented from amendment based on deadlines that were neither stated in, nor incorporated by reference into, the post-remand scheduling order. For these reasons, the Court finds that Defendants have demonstrated that "justice so requires" leave of Court to allow their defense of res judicata, and that they have good cause for doing so in contravention of any applicable scheduling deadlines. Defendants' motion for leave to amend their answer is therefore granted.

### III. Defendants' Motion for Summary Judgment Based Upon Res Judicata (Dkt. 438)

Defendants move for summary judgment based on res judicata, arguing that Plaintiff's claims are barred both by claim preclusion and issue preclusion under Virginia law. *See* Dkt. 439. The Court finds that both claim preclusion and issue preclusion apply to this case and preclude Plaintiff's constructive fraud claim against Defendants. Therefore, Defendants' motion for summary judgment on these grounds must be granted.

#### A. Legal Standard

When determining the preclusive effect of a prior federal court decision, a federal court sitting in diversity must look to the "law that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Accordingly, this Court applies Virginia law to determine the application of res judicata in the instant case. *See id.*

Under Virginia law, res judicata encompasses both claim preclusion and issue preclusion. *Lane v. Bayview Loan Servicing*, LLC, 831 S.E.2d 709, 713 (Va. 2019). "[C]laim preclusion bars relitigation of a cause of action, [and] issue preclusion bars relitigation of a factual issue." *Lane*, 831 S.E.2d at 714. While the elements differ between claim preclusion and issue preclusion, at bottom, the doctrine is generally "founded upon two maxims of law, one of which is that 'a man

should not be twice vexed for the same cause;' the other is that 'it is for the public good that there be an end of litigation.'" *Lane*, 831 S.E.2d at 714 (quoting *Patterson v. Saunders*, 74 S.E.2d 204 (1953)). The party asserting res judicata as a defense bears the burden to show by a preponderance of the evidence that the claim or issue at bar should be precluded by a prior judgment. *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018).

### 1. Claim Preclusion

In the Commonwealth, claim preclusion is embodied in Virginia Supreme Court Rule 1:6, which states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a). Under this rule, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Lee v. Spoden*, 776 S.E.2d 798, 803 (2015). In other words, parties may not "relitigate the same cause of action, or any part thereof which *could have been litigated in the previous action*." See *D'Ambrosio*, 809 S.E.2d at 628 (emphasis added). Furthermore, the term "party or parties" includes all named parties and those in privity with named parties. *Lane*, 831 S.E.2d at 714 (citing Rule 1:6(d)). Accordingly, the elements of claim preclusion under Virginia law are:

> (1) a final judgment on the merits,
> (2) the same parties (or their privies) in both proceedings, also expressed as identity of the parties, and
> (3) both causes of action arising out of the same conduct, transaction, or occurrence.

*See Lane*, 831 S.E.2d at 714.

    2. *Issue Preclusion*

Issue preclusion, also known as collateral estoppel, precludes "parties to the first action and their privies" from relitigating "any issue of fact actually litigated and essential to a valid and final personal judgment in the first action." *Lane*, 831 S.E.2d at 714. Unlike claim preclusion, in which a party's claim may be precluded even if she did not raise it in the first instance, issue preclusion requires that the issue to be precluded "have been the subject of *actual* rather than *potential* litigation." *Id.* (emphasis added). Furthermore, to be effective, "the estoppel of the judgment ordinarily must be mutual," *i.e.*, a litigant cannot invoke the preclusive force of a judgment "unless he would have been bound had the prior litigation of the issue reached the opposite result." *Nero v. Ferris*, 284 S.E.2d 828, 831 (Va. 1981). This is known as mutuality. Virginia courts have noted that "the policy underlying mutuality is to ensure a litigant that he will have a full and fair day in court on any issue essential to an action in which he is a party." *Bates v. Devers*, 202 S.E.2d 917, 921 n.7 (Va. 1974). However, mutuality "should not be mechanistically applied when it is compellingly clear from the prior record that the party in the subsequent civil action against whom collateral estoppel is asserted has fully and fairly litigated and lost an issue of fact which was essential to the prior judgment." *Id.* (cleaned up).

    Accordingly, the elements of issue preclusion are:

> (1) the parties [or their privies] to the two proceedings must be the same,
> (2) the issue of fact sought to be litigated must have been actually litigated in the prior proceeding,
> (3) the issue of fact must have been essential to the prior judgment, and
> (4) the prior proceeding must have resulted in a valid, and final judgment against the party against whom the doctrine is sought to be applied.

*See Lane*, 831 S.E.2d at 714.

    3.  *Privity*

Both claim preclusion and issue preclusion require "identity of the parties," which may be established through privity. *Lane*, 831 S.E.2d at 714. "Privity is a 'mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights, and . . . when applied to a judgment or decree refers to one whose interest has been legally represented at the trial.'" *Id.* (quoting *Patterson v. Saunders*, 74 S.E.2d 204 208 (Va. 1953)). In other words, privity is "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Weinberger v. Tucker*, 510 F.3d 486, 492–93 (4th Cir. 2007) (stating that under Fourth Circuit and Virginia decisions, the test for privity is the same).

The inquiry underlying privity—for purposes of res judicata—is whether a party's interest "is so identical with another that representation by one party is representation of the other's legal right." *State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 (2001). This inquiry embraces less the relationships "between persons or entities," and more so the relationship a person has "to the subject matter of the litigation." *Lane*, 831 S.E.2d at 714. Parties are generally not in privity where one has no interests or rights implicated in the accusations against the other. *See Raley v. Haider*, 747 S.E.2d 812, 817 (Va. 2013) (finding that privity did not exist where the result of the prior litigation "was of no consequence" to the subsequent parties, "because no effect of the judgment would reach them; none of their rights or concerns were adjudicated"). Ultimately, whether privity exists requires a "case by case examination of the relationship and interests of the parties." *State Water Control Bd.*, 542 S.E.2d at 769.

Virginia courts typically find that privity exists when the parties "share a contractual relationship, owe some kind of legal duty to each other, or have another legal relationship such as co-ownership." *Columbia Gas Transmission, LLC v. David N. Martin Revocable Tr.*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011). Furthermore, privity may be established by a principal-agent relationship: "Where . . . [an] agent's authority is proved, no question of privity can arise. The doctrine of principal and agent—whether disclosed or undisclosed—recognizes that privity of contract exists. The act of the agent is the act of the principal." *Harris v. McKay*, 122 S.E. 137, 140 (Va. 1924).

Under Virginia law, agency is defined as "a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 249 (Va. 2002). In determining whether an agency relationship exists, courts consider a principal's "power to control" a purported agent; but agency may also be "inferred from the conduct of the parties and from the surrounding facts and circumstances." *Id.* (cleaned up). Whether an agency relationship exists is a question to be resolved by the fact finder "unless the existence of the relationship is shown by undisputed facts or by unambiguous written documents." *Id.* (cleaned up).

B. Discussion

Defendants contend that they are entitled to judgment as a matter of law based on res judicata, arguing that both claim preclusion and issue preclusion apply here. Dkt. 439 at 5. They argue that they are in privity with Defendant Reid and that, therefore, the "jury verdict and judgment entered in favor of Defendant Reid" precludes Plaintiff from asserting her constructive fraud claim against them. Dkt. 439 at 5. The Court agrees. The Court finds that Defendants satisfy

the elements of both claim preclusion and issue preclusion, thereby barring Plaintiff's litigation of constructive fraud as raised against Defendants in this case. In reaching this decision, as explained below, the Court first determines that privity exists between the defendants; next the Court finds that all the remaining elements of claim preclusion and issue preclusion are satisfied.

   *1. Privity*

As noted, both claim preclusion and issue preclusion require "identity of the parties," which may be established through privity. *Lane*, 831 S.E.2d at 714. Defendants argue that "there is an identity of parties between Reid and Gustafson and [Hasbrouck Corporation]," such that privity exists. Dkt. 439 at 7. The Court agrees and finds that Defendants' interest in this litigation are "so identical" with Defendant Reid's interest in the prior litigation that the trial of Defendant Reid essentially constitutes "representation of [Defendants'] legal right[s]." *State Water Control Bd.*, 542 S.E.2d at 769. Therefore, the jury verdict finding Reid not liable for constructive fraud must apply in privity to the instant Defendants and results in barring Plaintiff's claim against them.

The following factors persuade the Court that privity exists. First, Defendant Hasbrouck, Defendant Gustafson, and Defendant Reid were all three involved in various forms of contractual or employment relationships with one another. Defendant Reid owned the real property where the alleged tort occurred, and Reid, in turn, employed Defendant Hasbrouck to manage and maintain that property as a rental unit. Dkt. 6 at 2. Defendant Hasbrouck, meanwhile, employed Defendant Gustafson as the leasing agent and property manager specifically assigned to the property. Dkt. 6 at 2. The three defendants were involved in a web of contract and employment-based relationships—which strongly suggests the existence of privity between the instant Defendants and Reid. *See Columbia Gas Transmission, LLC,* 833 F. Supp. 2d at 558 ("Virginia courts typically find privity when the parties share a contractual relationship, owe some kind of legal duty to each

other, or have another legal relationship such as co-ownership."). Similarly, these relationships constitute principal-agent relationships. Defendant Gustafson acted as an agent for her principal and employer, Hasbrouck, and Hasbrouck in turn acted as an agent for its principal, Reid. These agency relationships provide an additional ground for determining that privity exists. *Harris*, 122 S.E. at 140 ("Where . . . [an] agent's authority is proved, no question of privity can arise.").

Furthermore, acknowledging that privity for res judicata purposes turns on the parties' shared relationship "to the *subject matter* of the litigation," *Lane*, 831 S.E.2d at 714 (emphasis added), the Court also finds that the instant Defendants shared a virtually identical interest to Reid in the subject matter of the litigation, such that the two groups of defendants can be said to have held and advanced the same legal rights and arguments. In each phase of litigation at issue here, the cause of action has been the same—constructive fraud—and the facts supporting that claim have been the same. At no point during these various stages of litigation did Defendant Reid and the instant Defendants diverge in their litigation strategy so as to compromise the other, and at no point did the two groups of defendants become adversarial. In fact, the Court notes that Plaintiff herself has stated in several other filings that privity existed between Reid and Defendants, especially emphasizing the notion that the two groups of defendants share the same interest in this litigation. For instance, in her motion *in limine* to admit her former expert's trial testimony, Plaintiff stated the following: "Reid was the Defendants' principal . . . and the Defendants were agents . . . fully acting on her behalf. All the Defendants had mutual contractual obligations with each other . . . , *resulting in a relationship of privity*, shared interests, and similar motives to defend against [Plaintiff's] lawsuit." Dkt. 427 (emphasis added). Likewise, in Plaintiff's reply motion seeking summary judgment to dismiss Defendants' other affirmative defenses, Plaintiff substantially based her argument on the notion that privity existed, arguing as follows:

> The Defendants had close contractual and legal ties and strong common interests based on the lease and property management and leasing agreement. Based on these contractual agreements, Defendant Reid owed a legal duty to the Defendants to indemnify, defend, save, and hold the Defendants harmless from any legal action and claims of damages. They all worked closely together to defend each other's mutual interests and rights during the litigation of this case based on their agreements and duties to each other. They have repeatedly incorporated each other's briefs as their own within their briefs and motions. Snell informed the Defendants that she planned to appeal any adverse ruling, which caused Reid and the Defendants,' all being supported financially by Loudoun Mutual, to continue assisting each other throughout the litigation, trial, appeal, and even through to the present time. It is readily apparent that privity between the parties cannot be reasonably disputed.

Dkt. 430 at 8.

Finally, this case is unlike others in which courts have found parties' interests to be divergent such that privity did not exist. In *Raley v. Haider*, the Supreme Court of Virginia was asked whether privity existed between a complex set of parties. 747 S.E.2d 812 (Va. 2013). Pertinent here, the plaintiff-physician, Raley, first sued two defendants, a medical practice (Minimally Invasive Spine Institute, PLLC (MISI)), and its owner-physician, Haider. *See Raley*, 747 S.E.2d at 814. In a subsequent suit, Raley proceeded against Haider, Minimally Invasive Pain Institute, PLLC (MIPI) and Wise, LLC (Wise). *Id*. Raley's claims against the first group of defendants were dismissed (in part) by a final judgment on the merits, and the second group of defendants thereafter sought to assert res judicata against Raley based on this judgment. *Id*. at 816-17. However, the Court found that the second group of defendants (MIPI and Wise) were neither parties to the original action nor in privity with the first group of defendants:

> In the present case, MIPI and Wise do not share an identity of interest with Haider or MISI. In the first suit, Haider was accused of wrongfully distributing MISI's assets to himself. Wise and MIPI have no contractual duty or legal interest in this accusation. They only have an interest in the assets of MISI that they are alleged to

> possess. Moreover, neither MISI nor Haider represented Wise's and MIPI's interests in the first suit. Whether the circuit court found in MISI's or Haider's or Raley's favor, the result was of no consequence to Wise and MIPI because no effect of the judgment would reach them; none of their rights or concerns were adjudicated.

*Raley*, 747 S.E.2d at 816-17. In other words, MIPI and Wise were not in privity with the original defendants because the accusation of wrongdoing as to the original defendants in no way implicated their own rights or concerns.

Here, we confront the opposite situation. Plaintiff sued Defendant Reid for constructive fraud based strictly on Defendant Gustafson's alleged misrepresentations and strictly on the theory that Reid was to be held liable as Gustafson's principal. The suit against Reid therefore directly and unavoidably implicated Gustafson's interests and concerns, and the interests and concerns of her employer, Hasbrouck. Unlike *Raley*, where the parties asserting res judicata had "no contractual duty or legal interest" in the original accusation, Gustafson and Hasbrouck's duties as agents of Reid were inextricably bound up in the trial against Reid—because Reid was being tried *as their principal* and based on *their actions*. Accordingly, the Court finds that Defendants' interest in this litigation are so intertwined with Defendant Reid's interest in the prior litigation that the trial against Reid was essentially a trial against Defendants, such that the parties are in privity with one another.

   2. *Claim Preclusion*

With privity established, the Court focuses next on the remaining first and third elements of claim preclusion. The first element of claim preclusion—a final judgment on the merits—is met because, in the prior instance of this litigation, the jury found Defendant Reid not liable for constructive fraud, judgment was entered in her favor, and the judgment was affirmed by the Fourth Circuit. *See* Dkt. 296 (jury verdict); Dkt. 408 (Fourth Circuit opinion); *Snell v. Reid*, No.

22-1869, 2024 WL 2815061 (4th Cir. June 3, 2024); *see also Faison v. Hudson*, 417 S.E.2d 302, 305 (Va. 1992) ("A judgment is not final for the purposes of res judicata or collateral estoppel when it is being appealed.").

The third element of claim preclusion—that both causes of action arise out of the same conduct—is met because Plaintiff's constructive fraud claims against Defendant Reid and the instant Defendants all arise from the same conduct—the false statements that Defendant Gustafson allegedly made during a pre-rental walkthrough regarding the condition of the defective baluster. As against Reid, Plaintiff argued that Gustafson's statements subjected Reid to liability (for constructive fraud) based on a principal-agent theory. In the instant case, Plaintiff takes a more straightforward approach to liability, seeking to hold Defendants directly liable for Gustafson's statements. But in each case, Plaintiff's claims arise strictly and solely out of Gustafson's allegedly false statements made during the pre-rental walkthrough. *See* Dkt. 39 at ¶ 19 ("Ms. Gustafson stated that the porch, stairs, and stair rail systems had been maintained and painted recently and confirmed that they, too, were 'in great shape' and 'structurally sound' and have been 'regularly inspected and properly maintained.'").

Accordingly, the Court finds that all of the elements of claim preclusion exist here by a preponderance of the evidence. Defendants and Reid are privies; because Reid and Defendants are privies, any claim that Plaintiff had against the instant Defendants which arose out of the same transaction or conduct (Gustafson's statements during the walkthrough) should have been raised in the prior action against Reid. That litigation resulted in a final judgment on the merits, finding that no constructive fraud occurred, and that Reid was not liable. Such a judgment now precludes Plaintiff from raising the same cause of action against the instant Defendants, whose rights and concerns have already been adjudicated in privity. Therefore, Plaintiff's claim of constructive

fraud against Defendants is barred by claim preclusion, and Defendants' motion for summary judgment on this ground is granted.

### 3. Issue Preclusion

Alternatively, the Court finds that issue preclusion applies to bar relitigation of the central factual issue in this case. With privity already established, the elements of issue preclusion are: (i) the issue of fact sought to be litigated was actually litigated in the prior proceeding, (ii) the issue of fact was essential to the prior judgment, and (iii) the prior proceeding resulted in a valid and final judgment against the party against whom the doctrine is sought to be applied. *See Lane*, 831 S.E.2d at 714. Here, the issue of fact to be precluded is whether Defendant Gustafson "made a false statement to Plaintiff and whether Plaintiff relied on it." Dkt. 439 at 7-8. The Court finds, as explained below, that this issue was actually litigated in the trial against Reid, that the issue was essential to the jury's verdict, and that the jury's verdict was a final and valid judgment against Plaintiff.

First, the issue was actually and extensively litigated throughout the proceeding against Reid. Indeed, the issue took center stage. As Defendants point out:

> The very first substantive point made by Plaintiff in her closing statement in the trial against Reid concerned the statements allegedly made by Gustafson. Plaintiff immediately thereafter argued that Defendant Reid should be held liable for Gustafson's statements as Gustafson's principal. She presented evidence on the statements allegedly made by Ms. Gustafson and how Plaintiff relied on them. This Court stated after the close of Plaintiff's evidence that the question before the Court was whether Reid could be "responsible for what was conveyed to Ms. Snell by the agent." The jury was instructed on the definition of constructive fraud and when a principal can be found liable for the acts of their agent.

Dkt. 439 at 7-8 (citations omitted). After reviewing the record, the Court agrees that the factual issue of Gustafson's statements and Plaintiff's reliance on those statements was "the subject of *actual* rather than *potential* litigation." *Lane*, 831 S.E.2d at 714.

Second, and relatedly, the issue was essential to the judgment. The jury was instructed to find Reid liable (as Defendants' principal) "for the fraudulent or deceitful acts of her agent [Gustafson] committed as an incident to and during the performance of an act which is within the scope of the agent's authority." *See* Dkt. 292, *Final Jury Instructions*, at 14. Based on these instructions, Reid could have been liable *only if* the jury found that Gustafson was liable for constructive fraud. Conversely, if Reid was not liable, the jury's reasoning for that decision would necessarily absolve Gustafson (and her employer, Hasbrouck) of liability, since the causes of action and the factual allegations as between the three defendants are identical. In other words, a determination that Reid was not liable for constructive fraud necessarily required finding that Gustafson was not liable for constructive fraud, which necessarily required making the factual determination that Gustafson had not made the alleged misrepresentations and/or that Plaintiff had not relied on them. Therefore, the Court finds that the issue of Gustafson's statements and Plaintiff's reliance was "essential" to the jury's verdict. The Court further finds that the jury's verdict, after being appealed and affirmed, was a valid final judgment against Plaintiff.

Finally, the Court addresses the issue of mutuality. The Court finds that mutuality is satisfied here because, had the jury "reached the opposite result" and found for Plaintiff, Defendants "would have been bound" by that judgment as privies and agents of Reid, and Plaintiff would have been entitled to assert that judgment against them. *See Nero*, 284 S.E.2d at 831. Moreover, the Court finds that it is "compellingly clear from the prior record" that Plaintiff has "fully and fairly litigated and lost an issue of fact which was essential to the prior judgment," such

that the policy underlying mutuality is heeded regardless. *See Bates*, 202 S.E.2d at 921, n.7 (stating that mutuality "should not be mechanistically applied when it is compellingly clear from the prior record that the party in the subsequent civil action against whom collateral estoppel is asserted has fully and fairly litigated and lost an issue of fact which was essential to the prior judgment") (cleaned up).

Therefore, the Court finds that all of the elements of issue preclusion are satisfied. Plaintiff here reasserts the same claim for constructive fraud she asserted in the prior phase of litigation, which litigation resulted in the jury determining that Gustafson had not made the alleged misrepresentation or that reliance did not occur. That issue is central to Plaintiff's instant claim and cannot be relitigated. Were Plaintiff now allowed to proceed in the instant case against Defendants, such litigation would either be redundant, because it would be asking a jury to decide the exact same factual issue that was already litigated; or it would futile, because Plaintiff would be estopped from litigating an issue without which she could not prevail. Issue preclusion seeks to avoid both outcomes. Defendants' motion for summary judgment on the ground of issue preclusion must therefore be granted.

### IV.     Conclusion

Defendants move the Court to grant them leave to amend their answer to plead res judicata. Dkt. 434. Defendants further move for summary judgment based on res judicata, arguing that both claim preclusion and issue preclusion apply. Dkt. 438. As shown above, the Court finds that (i) Defendants are entitled to amend their answer to plead res judicata, and that (ii) claim preclusion and issue preclusion apply in the instant case to preclude Plaintiff's claim for constructive fraud. Therefore, the Court will **GRANT** Defendants' motion to amend and motion summary judgment

on res judicata grounds, Dkts. 434 and 438, in an accompanying order. The parties' remaining motions are dismissed as moot.

The Clerk of the Court is directed to send a copy of this Order to all counsel of record.

Entered this 1st day of November, 2024.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE