CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 10, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| MARCIA SNELL,<br><br>*Plaintiff*,<br><br>v.<br><br>BUFFY JO GUSTAFSON, *et al*.,<br>*Defendants*. | CASE NO. 3:21-cv-00024<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Marcia Snell moves the Court to alter its prior judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), Dkt. 502, and Defendants renew their motion for summary judgment. Dkt. 506.

Previously, the Court granted summary judgment in favor of Defendants Gustafson and Hasbrouck based on res judicata grounds. Dkt. 487 (opinion); Dkt. 488 (order). Subsequently, Snell moved for relief from that judgment, and the Court granted in part and denied in part her motion. *See* Dkt. 500; Fed. R. Civ. P. 60(b). In granting her Rule 60 motion, the Court found that it had "erred by considering Plaintiff's admissions as record evidence to support summary judgment." Dkt. 500 at 10. The Court, however, afforded Defendants 60 days to conduct reasonable discovery and file a renewed motion for summary judgment. *Id.* Snell is now seeking relief from the Court's decision to allow Defendants to refile. Dkt. 502. For the following reasons, the Court denies Snell's motion to alter judgment and grants Defendants' renewed motion for summary judgment. Dkt. 502; Dkt. 506.

## BACKGROUND

In her second amended complaint, Snell alleges that she fell and injured herself when a wooden railing gave way in her rental home. Dkt. 39 at ¶¶ 25–27.[1] Snell alleges that the wood had been covered with a fresh layer of white paint so that it was not apparent that the railing was "decayed" and "rotted." *Id.* at ¶ 28. She further alleges that (i) Defendant Gustafson stated during their pre-rental walkthrough that the stairs and rail system were "in great shape" and "structurally sound"; and (ii) she relied on those statements. *Id.* at ¶ 19. Snell claims that her fall caused her multiple serious injuries. *Id.* at ¶¶ 45–48.

Based on these allegations, her second amended complaint pled five causes of action; her constructive fraud claim, Count V, is at issue before the Court. *See* Dkt. 39. The complaint named three defendants: Rebecca A. Reid (the owner of the home), Hasbrouck Real Estate Corporation ("Hasbrouck") (the property management company hired by Reid to manage the unit and Gustafson's supervising real estate broker), and Buffy Jo Gustafson (leasing agent assigned to the home). *Id.*

Snell alleged that all three defendants were liable for constructive fraud because of the purported false statements that Gustafson made during the pre-rental walkthrough. *Id.* at 19. This Court granted Gustafson and Hasbrouck summary judgment on the constructive fraud claim and dismissed them from the case. Dkt. 250. Thereafter, Snell's case against Reid proceeded to a jury trial—solely on the constructive fraud claim. At trial, the Court instructed the jury on Reid's liability under a principal-agent theory, stating that "[a] principal is liable for the fraudulent or deceitful acts of her agent committed as an incident to and during the performance of an act which is within the scope of the agent's authority." *See* Dkt. 292, Final Jury Instructions, at 13. The jury

---

[1]    Because the background and procedural history of this case have largely remained unchanged since the Court's November 1, 2024 opinion, this section closely resembles the Background section of the Court's prior opinion.

returned a verdict in favor of Reid, finding that she was not liable for Snell's injuries, and the Court entered judgment accordingly.[2] Dkt. 296; Dkt. 307.

Snell appealed to the Fourth Circuit and the judgment was affirmed in part and reversed in part. Dkt. 310; *Snell v. Reid*, No. 22-1869, 2024 WL 2815061 (4th Cir. June 3, 2024). Relevant here, the Fourth Circuit vacated the Court's grant of summary judgment to Gustafson and Hasbrouck on Snell's constructive fraud claim, holding that for purposes of constructive fraud "it was irrelevant whether Gustafson knew [her] statements were false at the time she allegedly made them." *Snell*, 2024 WL 2815061, at *2. Accordingly, the Court entered a scheduling order to docket Snell's constructive fraud claim against Gustafson and Hasbrouck as the sole remaining cause of action in the case. Dkt. 413.

Both parties moved for summary judgment, and Defendants moved for leave to amend their pleadings to add the affirmative defense of res judicata. *See* Dkts. 420, 423, 434. The Court granted Defendants' motion to amend and motion for summary judgment. *See* Dkt. 487. Snell then moved the court for relief from that judgment under Federal Rule of Civil Procedure 60(b)(1). *See* Dkt. 495. She argued that she was entitled to relief from the Court's judgment on four grounds of legal "mistake." *See* Fed. R. Civ. P. 60(b)(1).

On May 19, 2025, the Court issued an opinion rejecting all of Snell's arguments, except the last, finding it had erred by considering Snell's admissions as record evidence to support summary judgment. Dkt. 500. As such, the Court denied Defendants' motion for summary judgment but provided Defendants a sixty-day window to conduct discovery to support the motion and file a renewed motion for summary judgment. *Id.* at 14.

On June 13, 2025, Snell filed her second motion to alter judgment, this time asking for relief

---

[2]    *See* Dkt. 296, Verdict Form, at 2 ("Do you find by clear and convincing evidence that Defendant is liable for constructive fraud?" Answer: "No.").

from the Court's May 19, 2025 opinion. Specifically, she asserts that: (1) the Court erred in applying Virginia law to its determination of when a "final judgment" becomes "final" for "preclusive purposes," arguing that federal law should be applied to this "procedural" function; and (2) the Court erred by granting Defendants leave to amend because they "waived their affirmative defenses of res judicata and collateral estoppel by not raising [them] 'at the first reasonable opportunity.'" Dkt. 503 at 2. On September 29, 2025, the Court heard arguments as to Snell's motion to alter judgment and Defendants' renewed motion for summary judgment. Dkt. 502; Dkt. 506. The Court addresses each motion in turn.

## MOTION TO ALTER OR AMEND JUDGMENT

### I.  Legal Standard

As a preliminary matter, Snell mistakenly brings her motion to alter or amend judgment under Federal Rules of Civil Procedure 59(e) and 60(b)(1) rather than Rule 54(b), which governs a motion for reconsideration of an interlocutory order.[3] However, given Snell's pro se status, the Court will liberally construe her 59(e) and 60(b) motion as a 54(b) motion and analyze it accordingly.

An interlocutory order can be revised "at any time before the entry of judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). A court may revise an interlocutory order under three circumstances, when: (1) "a subsequent trial produc[es] substantially different evidence"; (2) a plaintiff alleges "a change in applicable law"; or (3) "the need to correct clear or manifest error in law or fact, to prevent manifest injustice." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th

---

[3]    Because the Court's previous order—which found that it had erred in granting summary judgment and afforded Defendants leave to refile—was not a final judgment, but rather an interlocutory order, the proper grounds for Snell's new motion is Federal Rule of Civil Procedure 54(b). *See Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 319 (4th Cir. 2003) (defining an interlocutory order as "one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits") (citation omitted).

Cir. 2017) (citations omitted); *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514

(4th Cir. 2003). Although the "goal" of a rule 54(b) motion "is to reach the correct judgment under

law," it "may not be used merely to reiterate arguments previously rejected by the court." *In re*

*Marriott Int'l, Inc.*, 2021 WL 1516028 at * 3 (D. Md. Apr. 16, 2021) (quoting *Netscape Commc'n*

*Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010)).

## II.    Discussion

### a.    *The Court Rejects Snell's Argument that Federal Law Should Control the Timing of When the Court's Judgment Became Final for Preclusion Purposes*

*Semtek Int'l Inc. v. Lockheed Martin Corp.* is the controlling authority to determine the

choice of law in this case. 531 U.S. 497, 508 (2001); Dkt 487; Dkt. 500.[4] *Semtek* established that

a Virginia federal court, sitting in diversity, must apply Virginia law when deciding the application

of res judicata. *Semtek*, 531 U.S. at 508.

In her new motion to alter judgment, Snell concedes that Virginia law controls "the

underlying decision" regarding res judicata but disputes the Court's conclusion that state law also

governs the timing of the finality of the Court's judgment, maintaining instead that federal law

should apply to that determination. Dkt. 503 at 3. She argues that determining the finality of a

judgment is a "procedural" function and should be governed by federal law. *Id.* at 4.[5]

*Semtek*, however, rejects this argument. An essential element of res judicata is that there

must have been "a final judgment on the merits" in order for a litigant to assert the preclusion

defenses. *See Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 713-14 (Va. 2019). In

*Semtek*, the Supreme Court squarely decided that *state law* governs the determination of this

---

[4]      The Court need not further discuss why *Semtek* controls here because it has already done so in its two prior opinions and incorporates by reference those discussions. *See* Dkt. 487; Dkt. 500.
[5]      Because the Court did not directly address this argument raised by Snell in her previous Rule 60(b) motion, the Court does so now.

element.[6] 531 U.S. at 508-09 (finding that "federal common law governs" which requires that the law of the "State in which the federal diversity court sits" should apply as long as the state rule is not "incompatible with federal interests"). The Supreme Court explained: "Since state, rather than federal substantive law is at issue there is no need for a uniform federal rule" to determine the "res judicata effect of a federal diversity judgment." *Id.* at 500; 508. Indeed, "the state rule" should apply to such determinations, because "any other rule would produce the sort of 'forum-shopping . . . and inequitable administration of the laws' that *Erie* seeks to avoid, since filing in, or removing to, federal court would be encouraged by the divergent effects that the litigants would anticipate from likely grounds of dismissal." *Id.* at 500; 508-09 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).[7]

At bottom, Snell's argument asks the Court to apply federal law to one element of res judicata ("a final judgment on the merits") while applying Virginia law to the remaining elements. Such a bifurcated approach strains reason. As *Semtek* is binding authority, the Court must apply Virginia law across every element of Defendants' preclusion defenses. Accordingly, the Court rejects Snell's argument that federal law should govern determinations of a judgment's finality.

    *b.  The Court Rejects Snell's Argument that Georgia Pacific requires the Court to Find that Defendants Waived Their Preclusion Defenses by not Raising them at an Earlier*

---

[6]    Although the direct question the Court was tasked to answer in *Semtek* was what law applied to the latter half of the element, *i.e.* whether state or federal law should govern the determination of when a judgment or dismissal is "on the merits," the Supreme Court nonetheless implicitly decided that state law governs the determination of the entire element. Indeed, this Court finds that it would be "highly peculiar" to "announce a federally prescribed rule on the complex question of claim preclusion," to a single portion of an element after the Supreme Court has already decided that state law governs the latter half of that element. *Id.* at 503.

[7]    The present matter aptly illustrates how reliance on federal law to determine the timing of the finality of a judgment may encourage litigants to engage in forum-shopping. Under federal law, a judgment becomes final for preclusion purposes upon its issuance, and a party's appeal of the judgment does nothing to change that. *See Georgia Pacific Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527, 534, n. 7 (4th Cir. 2013). But, under Virginia law, "[a] judgment is not final for the purposes of res judicata or collateral estoppel when it is being appealed." *Faison v. Hudson*, 417 S.E.2d 302, 305 (Va. 1992). Thus, under federal law, the jury verdict rendered in favor of former-Defendant Reid became final upon its issuance, but under Virginia law the judgment became final after the Fourth Circuit decided Snell's appeal—a difference of nearly two years. Such a temporal disparity underscores why applying a uniform federal law might lead to the forum-shopping warned of in *Semtek.* 531 U.S. at 500; 508-09.

*Date*

Snell next argues that "the Court erred by granting leave to amend" because Defendants waived their preclusion defenses by not asserting them when they first arose. Dkt. 503 at 12. She argues that "even if" Virginia law applies to the finality determination, Gustafson and Hasbrouck were nonetheless "egregiously delayed" in "asserting their [preclusion] defense[s]." *Id.* at 16.

Snell relies on *Georgia Pacific* in making this assertion. *Georgia Pacific Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527 (4th Cir. 2013). In *Georgia Pacific*, paper-towel manufacturer, Georgia-Pacific Consumer Products, LP ("Georgia-Pacific"), brought a trademark infringement action against its competitor, von Drehle Corporation ("von Drehle"). *Id.* at 528. During the litigation, Georgia-Pacific filed additional cases against various distributors of von Drehle's paper towels, including Myers Supply, Inc., which alleged trademark infringement and ultimately was decided in Myers' favor. *Id.* at 529-30.

A month after the *Myers* case resolved, the district court granted summary judgment in favor of von Drehle on Georgia-Pacific's trademark infringement claim. *Id.* Georgia-Pacific appealed, and the Fourth Circuit overturned the case. *Id.* at 530. More than three months after the Fourth Circuit issued its opinion, von Drehle sought—for the first time—to amend its answer to assert the affirmative defenses of claim and issue preclusion citing the "preclusive effect of the *Myers* judgment" entered 480 days prior. *Id.* at 531.

The district court allowed von Drehle to amend and entered a judgment in its favor based on the preclusion defenses. *Id.* Georgia-Pacific appealed, and the Fourth Circuit reversed, finding that von Drehle had waived the preclusion defense because of the 480-day delay. *Id.* at 533.

In finding that von Drehle was unduly delayed in moving to amend, the Fourth Circuit explained that von Drehle had "allowed three significant periods in the litigation to conclude before first seeking to assert the preclusion defenses," namely: (i) "[t]he twenty-two days that

7

elapsed between the *Myers* decision and the district court's award of summary judgment"; (ii) "the twelve-month period that [the Fourth Circuit] retained jurisdiction over this matter in the initial appeal"; and (iii) the three-month period that elapsed between the [Fourth Circuit's opinion] vacating the district court's judgment and the motion filed by von Drehle in November 2010 seeking leave to amend its pleadings." *Id.* The Fourth Circuit noted, however, that, "it is not necessary that we determine the precise point at which von Drehle waived the preclusion defenses, because it is readily apparent that those defenses were no longer available" given the "480 day[]" delay. *Id.*

Snell maintains that under *Georgia Pacific* the three-month and ten-day delay between the Fourth Circuit's opinion vacating this Court's grant of summary judgment and Defendants' motion to amend, resulted in a waiver of their preclusion defenses. Dkt. 503 at 15. The Court disagrees.

In *Georgia Pacific*, the Fourth Circuit explained that the "16-month" delay resulted in Georgia-Pacific "expend[ing] considerable time, energy, and resources litigating the case." *Georgia Pacific*, 710 F.3d at 534. ("All this effort . . . could have been avoided" had the defense been raised 16 months earlier, and as such, von Drehle should not "be rewarded after it wasted the time and money of [Georgia Pacific] and the justice system.") *Id.* at 531.

Here, Gustafson and Hasbrouck first had the opportunity to raise their preclusion defenses after the Fourth Circuit issued its opinion on June 3, 2024. Dkt. 408. On September 13, 2024, three months and ten days later, Defendants moved to include the defenses. Dkt. 434. The facts in the instant matter lack the most significant lapse present in the *Geogia Pacific* facts—the additional twelve-month period von Drehle could have raised its preclusion defenses but did not. *Georgia Pacific*, 710 F. 3d at 534. As such, the Court does not find that *Georgia Pacific* directly requires this Court to find Defendants waived their preclusion defenses by not asserting them until three

months and ten days after the Fourth Circuit issued its opinion. Instead, at the time Defendants moved to amend, the Court found that Snell was not unduly prejudiced by the amendment given: (i) trial "was still three months away"; (ii) the defenses were not "futile or made in bad faith" and (iii) "responding to the defense of res judicata did not require Plaintiff to gather new evidence or analyze new facts." Dkt. 487 at 6. This finding is starkly different than the Fourth Circuit's finding that von Drehle's delay wasted significant resources of the parties, the district court, and the appellate court.

For these reasons, the Court denies Snell's 54(b) motion to alter the Court's previous order because she has failed to establish a "manifest error in law or fact" in need of correction. *Carlson*, 856 F.3d at 320 (citations omitted); *Am. Canoe Ass'n*, 326 F.3d at 505.

### DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT BASED ON RES JUDICATA

#### I.    Summary Judgment Legal Standard

Summary judgment is appropriate where a case has "no genuine dispute as to any material fact" and if "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is material "if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). A dispute is "genuine if a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.* The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id.*

#### II.    Res Judicata Legal Standard

Under Virginia law, res judicata encompasses both claim preclusion and issue preclusion. *Lane*, 831 S.E.2d at 713. "[C]laim preclusion bars relitigation of a cause of action, [and] issue preclusion bars relitigation of a factual issue." *Id.* at 714. The party asserting res judicata as a

defense bears the burden to show by a preponderance of the evidence that the claim or issue at bar should be precluded by a prior judgment. *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018).

   a. *Claim Preclusion*

In Virginia, the elements for claim preclusion are:

> (1) a final judgment on the merits,
> (2) the same parties (or their privies) in both proceedings, also expressed as identity of the parties, and
> (3) both causes of action arising out of the same conduct, transaction, or occurrence.

*See Lane*, 831 S.E.2d at 714. Under this rule, parties may not "relitigate the same cause of action, or any part thereof which *could have been litigated in the previous action*." *See D'Ambrosio*, 809 S.E.2d at 628 (emphasis added).

   b. *Issue Preclusion*

The elements of issue preclusion, also known as collateral estoppel, are:

> (1) the parties [or their privies] to the two proceedings must be the same,
> (2) the issue of fact sought to be litigated must have been actually litigated in the prior proceeding,
> (3) the issue of fact must have been essential to the prior judgment, and
> (4) the prior proceeding must have resulted in a valid, and final judgment against the party against whom the doctrine is sought to be applied.

*See Lane*, 831 S.E.2d at 714. Furthermore, Virginia continues to "adhere to the doctrine of mutuality." *Hatley v. Watts*, 917 F.3d 770, 780 (4th Cir. 2019); *see also Norfolk & W. Ry. Co. v. Bailey*, 272 S.E.2d 217, 219 (Va. 1980) (choosing to resist the "modern trend" by not abrogating the mutuality requirement). Virginia courts have noted that "the policy underlying mutuality is to ensure a litigant that he will have a full and fair day in court on any issue essential to an action in which he is a party." *Bates v. Devers*, 202 S.E.2d 917, 921 n.7 (Va. 1974). Indeed, there is no question that mutuality is required under Virginia law. *Bailey*, 272 S.E.2d at 219. Thus, a litigant

10

cannot invoke the preclusive force of a judgment "unless he would have been bound had the prior litigation of the issue reached the opposite result." *Nero v. Ferris*, 284 S.E.2d 828, 831 (Va. 1981).

### III.    Discussion

Defendants Hasbrouck and Gustafson contend that privity and mutuality exist such that the jury verdict and judgment entered in favor of Reid precludes the claims against them. Dkt. 507 at 6. The Court agrees.

### a.    Privity

Defendants assert that, because Reid, Hasbrouck, and Gustafson shared contractual and "principal-agent-subagent" relationships, privity exists. *Id.* at 8. Gustafson held a Virginia associate real estate broker's license, and "Hasbrouck Real Estate Corporation" was listed directly under Gustafson's name on the license. Dkt. 507 Ex. A; Dkt. 168 Ex. A ¶ 1. Likewise, on May 1, 2017, Hasbrouck entered into a Residential Property Management and Exclusive Rental Agreement ("Agreement") with Reid in which Hasbrouck was employed to rent out and manage a property owned by Reid. Dkt. 507 Ex. B; Dkt. 168 Ex. A ¶ 3.[8] The Agreement's first paragraph refers to Reid as the "Owner" of the property and Hasbrouck as the "Agent." Dkt. 507 Ex. B at 1. The Agreement further states that Reid will "[i]ndemnify, defend, and save the Agent harmless from all suits in connection with the Property . . . .") *Id.* ¶ 24.

Gustafson signed the Agreement on behalf of Hasbrouck. *Id.* at 10. After the Agreement's execution, Gustafson was assigned to be the "individual property manager" in charge of the residence. Dkt. 168 Ex. 1 ¶ 4. During her management of the property, Gustafson met with Snell for a pre-rental walkthrough. *Id.* ¶ 13. After the walkthrough, Snell entered into a lease agreement which named Hasbrouck as the landlord's broker. Dkt. 176 at 30. Gustafson, again, signed the

---

[8]    Despite BCB Real Estate Group being a party to the Agreement, it is not a party in the instant matter. As such, the Court does not analyze BCB's relationship with Gustafson or the Agreement.

lease agreement on behalf of Hasbrouck. *Id.*

This evidence undisputedly demonstrates that Reid, Hasbrouck, and Gustafson were connected through a web of contract-based relationships and through a principal-agent-subagent relationship. Such relationships suggest an existence of privity. *Columbia Gas Transmission, LLC v. David N. Martin Revocable Tr.*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011) ("Virginia courts typically find privity when the parties share a contractual relationship, owe some kind of legal duty to each other, or have another legal relationship such as co-ownership."); *Harris v. McKay*, 122 S.E. 137, 140 (Va. 1924) ("Where . . . [an] agent's authority is proved, no question of privity can arise.").

Further, the virtually identical interests of Reid, Gustafson, and Hasbrouck in the litigation establish privity. *State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 (Va. 2001) (stating that the inquiry underlying privity is whether a party's interest "is so identical with another that representation by one party is representation of the other's legal right"). At trial, the only claim submitted to the jury against Reid was for constructive fraud.[9] The Court found that there was no evidence that Reid herself made any false statements; thus, the question for the jury was whether Reid's agent, Gustafson, made false statements (committed constructive fraud) that would make Reid liable. Dkt. 437 at 49. Therefore, the suit against Reid directly implicated Gustafson's interest and concerns, as well as the interest and concerns of Hasbrouck, Gustafson's principal.

In each phase of litigation at issue here, both the cause of action and the facts have remained the same. Accordingly, the Court finds that Gustafson and Hasbrouck's interests in this litigation are so intertwined with Reid's interest in the prior litigation that the trial against Reid was essentially a trial against Gustafson and Hasbrouck. As such, the Court finds that no genuine

---

[9]    *See infra* note 2.

dispute exists as to whether the parties are in privity with one another.

      *b.  Mutuality*

      In addition to finding that privity is established, the Court also finds that mutuality is established and relies on *Nero v. Ferris* in coming to this conclusion.[10] 284 S.E.2d 828 (Va. 1981). In *Nero*, the plaintiff was struck by a truck while walking in a San Franscisco crosswalk. *Id.* at 829. She filed suit in California against Noah Ferris, a Virginia resident whom she believed owned the truck, and his son, William Ferris, also a Virginia resident, whom she believed was driving the truck. *Id.* When both defendants failed to appear, the California court entered default judgments against them. *Id.* at 830.

      Nero then brought separate actions against Noah and William in Virginia to domesticate the California judgments. *Id.* In the action against Noah, the Virginia trial court found that "neither Noah Ferris nor his son and employee, William Ferris, were in San Francisco, California [on the date of the accident]" nor were they "involved in the accident." *Id.* at 831. Consequently, the Virginia trial judge ruled that the California court did not have jurisdiction over Noah and refused to domesticate the California judgment. *Id.* That judgment was not appealed.

      However, Nero attempted to domesticate the judgment against William. In that suit, William asserted res judicata and collateral estoppel, arguing that the Virginia trial court's prior determination—that Noah was not liable for the accident—barred relitigation of the issue of William's liability. *Id.* The trial court agreed. *Id.*

      On appeal, the Virginia Supreme Court affirmed. *Id.* at 832. The Court found that privity and mutuality were satisfied because Noah's alleged liability in the initial trial against him was

---

[10]      Interestingly, Justice Compton, the author of *Bailey*, which reinforced Virginia's mutuality requirement, also authored *Nero*, the following year. In *Bailey*, mutuality did not exist where there was no privity between the parties; however, in *Nero*, mutuality did exist where there was privity between the parties. *See Norfolk & W. Ry. Co. v. Bailey*, 272 S.E.2d 217(Va. 1980); *Nero v. Ferris*, 284 S.E.2d 828 (Va. 1981).

entirely "derivative of the tort liability of William, his agent." *Id.* at 831. In other words, to find Noah liable for the alleged accident, "the plaintiff would have been required to prove that William," acting as Noah's agent "operated Noah's vehicle in California." *Id.* at 832. Because the trial court in Noah's case found that he was neither involved in, nor liable for the accident, it necessarily also determined that William—Noah's agent—was neither involved in, nor liable for the accident.

The Court draws a direct parallel between the facts in *Nero* and the present case. Here, in the trial against Reid, the Court instructed the jury on a principal-agent theory of liability. *See* Dkt. 292, Final Jury Instructions, at 13.[11] In *Nero*, the first action proceeded against the principal, Noah; here, the jury trial proceeded solely against Reid, the principal of Gustafson and Hasbrouck. Noah's liability in *Nero* turned entirely on whether his agent was driving the vehicle that caused the accident; similarly, Reid's liability turned entirely on whether her agent, Gustafson, made the alleged statements regarding the railing's structural integrity. In *Nero*, the judgment in favor of Noah, the principal, precluded the later action against William, the agent. Here, a similar result must follow.

Relying on *Nero*, the Court finds that had the jury "reached the opposite result" and found for Snell, Defendants Gustafson and Hasbrouck "would have been bound" by that judgment as privies and agents of Reid, and Snell would have been entitled to assert that judgment against them. *See Nero*, 284 S.E.2d at 831. If the jury would have found in favor of Snell, it necessarily would have concluded that Gustafson committed constructive fraud. But, because the jury ruled in favor of Reid, it necessarily concluded that Gustafson *did not commit* constructive fraud. Thus, in either scenario, the jury was tasked with resolving the exact same factual issue central to

---

[11] The jury instruction read: "A principal is liable for the fraudulent or deceitful acts of her agent committed as an incident to and during the performance of an act which is within the scope of the agent's authority."

Gustafson's liability. As such, the Court finds that mutuality exists.

    *c.  Remaining Elements of Claim and Issue Preclusion*

With privity and mutuality established, the Court addresses the remaining elements of claim and issue preclusion. Both preclusion doctrines require a valid and final judgment on the merits. No dispute exists as to this element as the jury found Defendant Reid not liable for constructive fraud; judgment was entered in her favor; and the judgment was affirmed. *See* Dkt. 296 (jury verdict); Dkt. 408 (Fourth Circuit opinion); *Snell*, 2024 WL 2815061.

The third element of claim preclusion—that both causes of action arise out of the same conduct—is met because Snell's constructive fraud claims against Reid, Gustafson, and Hasbrouck all arise out of Gustafson's alleged statements made during the pre-rental walkthrough regarding the condition of the defective railing. Dkt. 39 at ¶ 19.

Similarly, the second and third elements of issue preclusion are met, because Gustafson's alleged false statements and Snell's reliance on them were actually litigated and essential to the judgment. During trial, the only issue before the jury was Gustafson's alleged representations. Dkt. 437 at 49. The Court instructed the jury to find Reid liable as Gustafson's principal "for the fraudulent or deceitful acts of her agent." *See* Dkt. 292, Final Jury Instructions, at 13. Based on this instruction, Reid could have been liable *only if* the jury had found that Gustafson was liable to Snell. Accordingly, the Court finds that the issue of Gustafson's statements was "actually litigated" and "essential" to the jury's verdict.

Therefore, the Court finds that all the elements of claim preclusion and issue preclusion are satisfied. Such a determination precludes Snell from raising the same cause of action, or litigating the same issue, against Gustafson and Hasbrouck, whose rights and concerns have already been adjudicated because they were in privity with Reid, and because mutuality exits.

Accordingly, Snell's constructive fraud claim against Gustafson and Hasbrouck is barred by both claim preclusion and issue preclusion. Therefore, the Court grants Defendants' motion for summary judgment.

CONCLUSION

For the reasons stated above, the Court finds that (i) Snell's motion to alter judgment and relief from judgment is **DENIED**, Dkt. 502; and (ii) Defendants' renewed motion for summary judgment based on res judicata is **GRANTED**, Dkt. 506**.** As such, Dkts. 420, 423, 426, 441, 443, and 446 are **DISMISSED** as moot.


The Clerk of Court is directed to send a copy of this Order to all counsel of record.

Entered this 10th day of December, 2025.

**NORMAN K. MOON**
**SENIOR UNITED STATES DISTRICT JUDGE**